UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

TAULESE FREEMAN                          CIVIL ACTION NO. 16-CV-936

VERSUS                                   JUDGE ELIZABETH ERNY FOOTE

KANSAS CITY SOUTHERN RAILWAY CO.         MAGISTRATE JUDGE HAYES

---

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Record Document 18] filed by Defendant, Kansas City Southern Railway Company ("KCS"), which prays for this Court to dismiss all claims brought against it by Plaintiff, Taulese Freeman ("Freeman"). Plaintiff, a former employee of KCS, asserts claims of discrimination based on sex and retaliation for making complaints about the alleged discrimination[1] under Title VII of the

---

[1] The first paragraph of Plaintiff's complaint states that she was subjected to a hostile work environment and also suffered termination for "seeking accommodations following medical problems." Record Document 3, p. 1. Plaintiff clarifies in her opposition to Defendant's motion that she does not allege a hostile work environment claim. Record Document 31, p. 3. She further states:
> Taulese Freeman brings her claim before this court based on an ongoing discriminatory animus based on sex (she's a female) which culminated in her being punished much more severely than her male comparators. The mistreatment she endured during her final few months at KCSR in 2012 and her eventual termination was in retaliation for complaints she had made and actions she had taken against prominent male peers the previous year.

Id. Plaintiff makes no reference to retaliation for seeking accommodations in her opposition memorandum. Based on her characterization of her claims, the Court assumes Plaintiff makes no claim for retaliation based on protected activity under the ADA or the FMLA. Plaintiff cites to neither provision in her complaint or opposition to Defendant's motion for summary judgment. Plaintiff further stated in her deposition that she makes no claim based on any disability. Record Document 18-4, p. 108.

Page 1 of 16

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. Upon consideration of the briefs filed by the parties and for the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

Plaintiff began working for KCS in 2009 as a conductor trainee. Record Document 3, p. 2; 18-2, p. 1. Plaintiff claims that she was one of the few females working at KCS and that, almost immediately after beginning her employment, she began experiencing sexual harassment, discrimination, and was made to feel unwelcome. Record Document 3, p. 2. During her employment, Plaintiff made complaints about two males she encountered at work. Specifically, it appears that in March of 2010, Plaintiff complained that a railroad taxi driver employed by a third party contractor made inappropriate comments to her. Record Document 18-2, p. 4; 18-4, p. 88. In response to her complaints, that particular driver was instructed that he was no longer to provide services for KCS or on KCS property. See id. Additionally, in March 2011, Freeman reported the inappropriate behavior of a male KCS employee, Marlin Player, which she alleged had occurred between June 2010 and March 2011. Record Document 18-2, p. 5; 18-4, pp. 78-81. Mr. Player was disciplined as a result of Plaintiff's complaints. Record Document 18-4, pp. 80-82.

Once she made complaints, Plaintiff claims she "began to be written up for infractions at the workplace for which her similarly situated male coworkers were not being similarly disciplined." Record Document 3, p. 3; 31-1, p. 2. On February 15, 2011, Freeman was written up for failing to wear proper eye protection. She admitted the rule

violation and received a reprimand. Record Document 18-2, p. 5; 18-4, pp. 53-54. This was classified as a minor violation. Record Document 18-10, p. 3. On February 27, 2011, Plaintiff was written up for failing to switch cars safely and efficiently, resulting in damage to railcars. Record Document 18-4, pp. 55-56; 18-2, p. 5. She admitted the violation and received a 5-day suspension. Record Document 18-4, pp. 56-57; 18-2, p. 5. This was also classified as a minor violation. Record Document 18-10, p. 3. On June 27, 2012, Plaintiff was charged with another rule violation: failure to inspect a passing train. Record Document 18-4, pp. 60-61; 18-2, p. 7. This was characterized as a major infraction under the discipline policy. Record Document 18-2, p. 7; 18-4, p. 66; 18-10, p. 24. Following an investigation, Plaintiff was found to have committed the violation and received a 60-day suspension, of which she was to serve 30 days. Record Document 18-4, pp. 63-64; 18-2, p. 7. On June 30, 2012, prior to the imposition of the suspension, Plaintiff was accused of another rule violation: switches run through.[2] Record Document 18-2, p. 7; 18-4, p. 66. Following an investigation, Plaintiff was found to have committed the violation and was terminated. Record Document 18-2, p. 7. Plaintiff appealed, but the finding of responsibility and the dismissal were upheld by the Public Law Board. Record Document 18-2, pp. 7-8; 18-10, p. 4; see Record Document 18-8. Plaintiff filed a charge of discrimination with the

---

[2]Defendant represents that Plaintiff, as the conductor "on the ground in control of the train movement, . . . directed the Engineer via radio to run through a switch in violation of GCOR 8.15." Record Document 18-2, p. 7. "GCOR" is an abbreviation for the General Code of Operating Rules. Id. at 1. Plaintiff acknowledged receipt of these rules. See Record Document 18-5, p. 3; 18-4, pp. 28-30.

EEOC in November 2012, and received a right to sue letter on March 31, 2016. Record Document 18-2, p. 8; 18-7; 18-14.

Plaintiff complains that she was subjected to harsher punishment than her male co-workers, and claims this occurred because she was female. Record Document 31, p. 3. She also claims she was terminated for making the above-referenced complaints against "prominent male peers." Id. KCS argues that Plaintiff cannot make a prima facie case of discrimination or retaliation and, even if she could, it had a legitimate, non-discriminatory reason for terminating Plaintiff—her history of rule violations—and she cannot demonstrate that its reason was pretextual.

## STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need

---

[3]Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See Celotex, 477 U.S. at 322-323.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. Little, 37 F.3d at 1075.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue

to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

**LAW AND ANALYSIS**

Title VII of the Civil Rights Act makes it an unlawful employment practice for an employer to refuse to hire or to discharge, or otherwise discriminate against any individual with respect to his or her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). In addition, Title VII prohibits an employer from discriminating against an employee because she "has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

**1.    Discrimination**

In the absence of direct evidence,[4] Title VII cases are governed by the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Turner v. Kansas City S. Ry. Co., 675 F.3d 887, 892 (5th Cir. 2012), as revised (June 22, 2012). First, Plaintiff must establish a prima facie case of discrimination. If Plaintiff makes a prima facie showing, Defendant must then provide a legitimate, non-discriminatory

---

[4]Plaintiff does not contend that she possesses direct evidence and, as an indication to the contrary, cites the McDonnell Douglas framework in her opposition memorandum.

reason for the employment action. Turner, 675 F.3d at 892 (citing Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089 (5th Cir. 1995)). "The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment." Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (quotations and citations omitted). If the employer provides a legitimate, non-discriminatory reason, the burden shifts back to Plaintiff to prove that Defendant's reason was a pretext for discrimination. Turner, 675 F.3d at 892 (citing Mayberry, 55 F.3d at 1089). "A plaintiff can establish pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence."'" Nasti v. CIBA Specialty Chems. Corp., 492 F.3d 589, 593 (5th Cir. 2007) (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 249 (1981)).

In order to establish a prima facie case of sex discrimination, Plaintiff must show that "(1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action; and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably."[5] Nasti, 492 F.3d

---

[5]Plaintiff clearly pursues a theory of disparate treatment, as she claims she was punished more severely than her male co-workers. Record Document 3, p. 3; 31, p. 3.

at 593 (citing Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512–13 (5th Cir. 2001)). Here, Defendant concedes that Plaintiff is a member of a protected class and that she suffered an adverse employment action when she was discharged. Record Document 18-1, p. 24. Defendant disputes that Plaintiff was qualified for her position and that similarly situated employees were treated more favorably than her. Id.

Plaintiff claims two instances of disparate treatment. First, in her complaint, Plaintiff claims that she and her co-worker, Bobby Baker ("Baker"), were working together in the KCS yard in September 2012 when "the train for which they were equally responsible 'ran through a switch' in violation of the GCOR 8.15." Record Document 3, p. 3. Plaintiff contends that though each worker should have been held jointly responsible for such an infraction, only she was punished. Id. at 4. This was the final infraction for which Plaintiff was terminated. Second, in her opposition to the motion for summary judgment, Plaintiff mentions another incident wherein she and Baker were reprimanded for failing to inspect a passing train. Plaintiff claims that she was disciplined for this incident, but Baker was not. See Record Document 31-1, pp. 4-5. Other than Baker, Plaintiff offers no other similarly situated employee for comparison.⁶

---

Further, she makes no allegation that she was replaced by someone who was not a member of her protected group.

⁶In Plaintiff's opposition memorandum, she states: "KCSR has not explained the disparity between the treatment of Ms. Freeman and Mr. Baker let alone the numerous men who have been treated less harshly for their work place infractions." Record Document 31, p. 7. Plaintiff does not identify these "numerous men" in her briefing to the Court. During Plaintiff's deposition, two other employees were mentioned: Clayton Davis and Anthony Hill. See Record Document 18-4, pp. 104, 122. Plaintiff makes no argument to the Court regarding these two individuals. Furthermore, Defendant notes

Defendant argues that Plaintiff cannot identify a similarly situated employee who received different treatment. First, Defendant notes that Plaintiff does not dispute that she received notice of four rule violations: (1) failure to wear proper eye protection; (2) failure to switch safely and efficiently; (3) failure to inspect a passing train; and (4) switches run through. See Record Document 18-10, pp. 23-26; 18-13; 18-4, pp. 51-68. At the time of her fourth and final violation, Plaintiff had received two minor and one major violation of the discipline policy. See id. Therefore, pursuant to KCS's discipline matrix [Record Document 18-6, p. 8], Plaintiff was dismissed. See Record Document 18-10, p. 4; 18-4, p. 119. Defendant argues that while Plaintiff may claim, for example, that another employee was not dismissed for the violation "switches run through," this would only be because that employee was not in the same position as Plaintiff on the matrix. Stated another way, Plaintiff cannot show that an employee who was similarly situated—that is, an employee with the same disciplinary history as Plaintiff—received different treatment.

In determining whether employees are "similarly situated," the Fifth Circuit has explained:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to

---

that both men have since been terminated for violating KCS's rules, and Plaintiff similarly acknowledged this fact. Record Document 18-1, p. 26; 18-4, p. 122.

have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259–60 (5th Cir. 2009) (footnotes and citations omitted). Plaintiff claims that Baker was not treated similarly as it relates to her last two discipline violations: failing to inspect a passing train and switches run through. She claims that both she and Baker were involved in these violations, but only she was punished. Record Document 31, p. 5.

First, regarding the "switches run through" incident, the Court agrees with KCS that Plaintiff has failed to show that Baker was a comparator for purposes of this incident. Plaintiff worked as a conductor for KCS. In her deposition, Plaintiff acknowledged that Baker is an engineer, and that engineers and conductors have different job descriptions and responsibilities. Record Document 18-4, pp. 97, 112, 120. Specifically, Plaintiff acknowledged in her deposition that it is the conductor who operates the switches, not the engineer. Record Document 18-4, p. 99. Further, KCS notes that its rules related to "switching" provide that the employee handling the switch is responsible for the switch and must make sure the switch is properly lined. Record Document 34, p. 7. This is consistent with Plaintiff's admission that she, as the conductor, would be the one to operate the

switches.[7] Accordingly, Plaintiff has failed to show that she and Baker performed the same functions or had the same responsibilities with respect to this incident.

It is less clear whether Baker may be considered a proper comparator for the failure to inspect the passing train incident. Plaintiff claims both she and Baker were required to inspect a passing train, and the relevant rule cited on Plaintiff's disciplinary action form, GCOR 6.29.1, does not clearly require conductors, but not engineers, to inspect passing trains. Record Document 18-10, p. 24; 18-10, p. 14. KCS does not explain why Baker was not punished for this alleged infraction, and unlike with the "switches run though" incident, KCS does not contend that Baker's responsibilities during the failure to inspect incident were materially different than Plaintiff's.[8] See Turner, 675 F.3d at 896 ("Although Turner

---

[7]The following exchange occurred at Plaintiff's deposition regarding the switches run through incident:
- Q: And [Bobby Baker] was the engineer and you were the conductor, correct?
- A: Correct.
- Q: And as the engineer, he's going to stay on and operate the locomotive, correct?
- A: Correct.
- Q: And you're going to be operating switches?
- A: Correct.

. . . .

- Q: All right. So you agree that conductors would actually operate the switches, not – not an engineer? An engineer would stay on the locomotive and operate the locomotive?
- A: That's correct.
- Q: Okay. And Mr. Baker was your locomotive engineer in Arkansas when that incident occurred?
- A: Yes.

Record Document 18-4, pp. 98-100.

[8]It was clear during Plaintiff's deposition that she believed Baker, as the engineer, was also required to inspect the passing train. See Record Document 18-4, p.

was an engineer and Schmitt was a conductor, KCSR does not contend that Schmitt's responsibilities during the sideswipe incident were materially different than Turner's responsibilities during the derailment incident.").

However, even assuming Plaintiff could show that Baker was a comparator for purposes of the failure to inspect incident, the Court would nonetheless find summary judgment appropriate on Plaintiff's discrimination claim. Assuming Plaintiff made her prima facie case, Defendant would then be required to produce a legitimate, non-discriminatory reason for its employment decision. In either case, whether Plaintiff's suspension for failing to inspect a passing train or her termination for switches run through, Defendant has met its burden. Defendant represents that Plaintiff was suspended for failing to inspect a passing train in violation of GCOR 6.29. Record Document 18-10, p. 3. Plaintiff admitted in her deposition that a conductor is obligated to inspect a passing train, and that she did not inspect the passing train. Record Document 18-4, pp. 132, 134. The discipline imposed is in accord with her prior violation history and the discipline matrix. As to the termination decision, Defendant represents that Plaintiff was terminated after receiving four violations in a three year period. Record Document 18-10, p. 4. Once again, the termination decision is in accord with Plaintiff's prior violation history and the discipline matrix. See Record Document 18-10, pp. 23-26; 18-6, p. 8.

---

132. While Defense counsel seemed to disagree, there is nothing in Defendant's briefing to the Court that explains why Baker was not required to inspect the train or why he was not punished for this incident.

Once Defendant satisfies its burden of showing a legitimate, non-discriminatory reason for the employment decision, Plaintiff must then come forward with evidence that the legitimate reasons offered by Defendant were not its true reasons, but were a pretext for discrimination. Turner, 675 F.3d at 892 (citing Mayberry, 55 F.3d at 1089). Plaintiff offers no evidence of pretext, instead offering only her bare assertions that she received different treatment than Baker, a male co-worker whom she admitted held a different employment position with different responsibilities. Plaintiff offers these allegations through the argument of counsel. She does not cite any summary judgment evidence in support of her assertions. A party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007) (citing Little, 37 F.3d at 1075).[9] And again, the Court would emphasize, as it relates to the suspension, Plaintiff admitted in her deposition that conductors are obligated to inspect passing trains and that she did not do so. Record Document 18-4, pp. 131-34. As to her termination, after an investigation, Plaintiff was found to have committed a fourth rule violation in a three year period, and pursuant to Defendant's discipline policy, dismissal was the "appropriate" action. See Record Document 18-6, p. 8; 18-13, p. 2; 18-10, p. 4. Plaintiff appealed to the Public Law Board, which upheld the determination and dismissal.

---

[9]See also Grimes v. Texas Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996) ("In an employment discrimination case, we focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. Needless to say, unsubstantiated assertions are not competent summary judgment evidence. . . . In response to motions for summary judgment, it is therefore incumbent upon the non-moving party to present evidence—not just conjecture and speculation—that the defendant retaliated and discriminated against plaintiff on the basis of her race." (citations omitted)).

Record Document 18-8. Plaintiff offers no evidence to demonstrate that KCS suspended or terminated her because she was female and not because of her work rule violations. Accordingly, summary judgment is proper on Plaintiff's discrimination claim.

**2.     Retaliation**

Proof of Plaintiff's retaliation claim involves the same McDonnell Douglas burden shifting framework.  First, Plaintiff must establish a prima facie case of retaliation. Then, Defendant would have the burden of articulating a legitimate, non-discriminatory reason for the employment decision. Finally, Plaintiff must show that Defendant's reason is a pretext for unlawful retaliation. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). To make a prima facie case of retaliation, Plaintiff must establish that: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. Id.

Protected activity under Title VII includes opposition to any practice made unlawful under Title VII, as well as making a charge, testifying, assisting, or participating "in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 240 (5th Cir. 2016). Plaintiff claims she engaged in protected activity when she made complaints to human resources concerning alleged sexual harassment, and Defendant does not dispute this element. Record Document 31, p. 6. It is similarly undisputed that Plaintiff suffered an adverse employment action when she was suspended and then terminated. See LeMaire v.

Louisiana Dep't of Transp. & Dev., 480 F.3d 383, 390 (5th Cir. 2007) (finding that a two-day suspension without pay is an adverse employment action). However, Defendant argues that Plaintiff cannot show any causal connection between her protected activity and the adverse employment actions. The Court agrees.

It appears that Plaintiff complained to KCS about alleged sexual harassment in March 2010 and March 2011. Record Document 18-2, p. 4-5; 31-1, p. 3; 18-19. She did not receive the write-ups for which she was suspended and terminated until June 2012. See Record Document 18-10, pp. 23-24. Thus, temporal proximity will not provide the causal connection element. See Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen., 730 F.3d 450, 454 (5th Cir. 2013) (noting that while close timing between protected activity and adverse action may satisfy the causal connection element, "a time lapse of up to four months may be sufficiently close, while a five month lapse is not close enough without other evidence of retaliation." (internal quotation and citation omitted)). Here, more than a year passed between protected activity and complained-of adverse actions. Plaintiff has similarly failed to show "an employment record that does not support dismissal" or "an employer's departure from typical policies and procedures." Id. at 454-55. Here, Plaintiff was found to have violated four KCS rules in three years, and the discipline she received was consistent with KCS's policy. Plaintiff has not clearly articulated how she proposes to satisfy the causal connection element, and instead claims "the totality of the circumstances presents the causal connection between her complaints and success at showing a discriminatory animus at her workplace." Record Document 31, p. 7. Plaintiff's

vague and conclusory language cannot defeat summary judgment. Because she has not shown a causal connection, she has not satisfied her prima facie case. Summary judgment is therefore granted as to Plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Record Document 18] is hereby **GRANTED** and Plaintiff's claims are **DISMISSED** with prejudice. A judgment consistent with this ruling will issue herewith.

**THUS DONE AND SIGNED** this 1st day of MAY, 2018 in Shreveport, Louisiana.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE